United States District Court
Southern District of Texas
**ENTERED**
July 30, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
| Plaintiff/Respondent, § | | |
| § | | |
| v. § | CRIMINAL NO. 2:16-27-1(SS) | |
| § | CIVIL NO. 2:17-360 | |
| JADA NICOLE GREGG-WARREN, § | | |
| Defendant/Movant. § | | |

## MEMORANDUM OPINION & ORDER

Defendant/Movant Jada Nicole Gregg-Warren filed a motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 (D.E. 145), to which the Government responded (D.E. 191). For the reasons stated herein, Movant's § 2255 motion is **DENIED**.

### I. BACKGROUND

In 2013, Movant pled guilty to possession with intent to distribute more than 100 grams of heroin and was sentenced to nine months' imprisonment. While she was in custody, Movant's sister and co-defendant, Georgia Michelle Gregg ("Georgia") took care of Movant's two children, T.R. and J.R. However, the Texas Department of Family and Protective Services (DFPS) removed T.R. and J.R. from Georgia's home after she gave birth to a baby that tested positive for methamphetamine. On November 6, 2014, the 407th Judicial District Court of Bexar County, Texas, terminated Movant's parental rights of T.R. and J.R. and appointed DFPS as permanent managing conservators. DFPS placed the children under the care of Movant's half-brother and his wife, the Davises. However, after the Davises decided not to adopt T.R. and J.R. in 2015, DFPS began searching for new foster parents for the children.

1

Giving rise to the current criminal case, on August 20, 2015, Movant and Georgia entered the Davises' home in the middle of the night, took the children, and drove to the U.S.–Mexico border. The two sisters parted ways, and Movant and the children got into another car with Movant's husband and codefendant, Ivan Francisco Alvarez-Benavente ("Alvarez"). Movant and Alvarez took the children to Mexico, where Alvarez's family lived. Between October 18, 2015, and December 9, 2015, the sisters' father and codefendant, Thomas Gregg, wired money to Movant and Alvarez in Torreon, Mexico. In December 2015, Mexican Federal Police entered Alvarez's home, arrested Movant, and recovered the children. Movant and the children were returned to the U.S., and Georgia and Alvarez were subsequently arrested.

On January 13, 2016, Movant was indicted on two counts of kidnapping in violation of 18 U.S.C. §§ 1201(a)(1) and 1201(g)(1). Pursuant to § 1201(g), each count carried a mandatory minimum sentence of 20 years' imprisonment. On June 30, 2016, the Government filed a Criminal Information charging Movant with one count of kidnapping in violation of § 1201(a)(1) only, which eliminated the 20-year mandatory minimum. The same day, Movant pled guilty to the Criminal Information pursuant to a written Plea Agreement.

The Presentence Investigation Report (PSR, D.E. 98) calculated Movant's base offense level at 32, and 2 levels were added under U.S.S.G. § 2A4.1(b)(4) because the victims were not released within 30 days. After credit for acceptance of responsibility, Movant's total offense level was 31. With a Criminal History Category of VI, her advisory Guideline range was 188–235 months' imprisonment. At sentencing, the Court adopted the

PSR without change, granted defense counsel's motion for a downward departure, and sentenced Movant to 120 months.

Judgment was entered November 2, 2016. Movant did not appeal. Her conviction therefore became final 14 days later, on November 16, 2016. She filed her § 2255 motion on November 15, 2017. It is timely.

## II. MOVANT'S ALLEGATIONS

Movant's § 2255 motion raises the following claims:

    A. The Court lacked subject matter jurisdiction;

    B. Trial counsel was ineffective because he failed to:
      1. prepare and file certain motions;
      2. file a direct appeal;
      3. adequately communicate with Movant; and
      4. perform an adequate investigation;

    C. The Government committed prosecutorial misconduct; and

    D. Movant's indictment, conviction, sentence, and process were "illegal."

## III. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*,

3

955 F.2d 367, 368 (5th Cir. 1992) (per curiam). In addition, "a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

## IV. ANALYSIS

### A. Lack of Subject Matter Jurisdiction

In her first claim, Movant asserts that, because "the parental/biological relative exemption from criminal liability applies to all biological parents of kidnapped children, even those who have been subject of termination decree at hands of state court," this Court lacked subject matter jurisdiction over the Defendants. D.E. 145-1, pp. 1–2. Movant argues that the "parent" exemption to 18 U.S.C. § 1201 applies to her case because she is the biological mother of the minor victims, citing *United States v. Sheek*, 990 F.2d 150 (4th Cir. 1993).

The federal kidnapping statute applies, in pertinent part, to anyone who "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, *except in the case of a minor by the parent thereof.*" 18 U.S.C. § 1201(a) (emphasis added). In *Sheek*, the Fourth Circuit held that the "parent" exemption applies to biological parents whose parental rights have been permanently terminated. *Sheek*, 990 F.2d at 153. The following year, however, Congress clarified the definition of "parent" in the Violent Crime Control and Law Enforcement Act of 1994 by amending 18 U.S.C. § 1201 to provide that "the term 'parent' *does not include a person whose parental rights . . . have been terminated* by a final court order." 18 U.S.C. § 1201(h) (emphasis added).

4

On November 6, 2014, the 407th Judicial District Court of Bexar County, Texas, terminated Movant's parental rights to J.R. and T.R. in Cause No. 2014-PA-00015. PSR ¶ 13. Movant also stipulated to the fact that her parental rights to the minor victims had been terminated by a court order. DE 80, p. 1. Because the "parent" exemption to the federal kidnapping statute was inapplicable to Movant, her claim that the Court lacked subject matter jurisdiction is denied.

### B. Ineffective Assistance of Counsel (IAC)

#### 1. IAC Standard

An IAC allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on an IAC claim, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90. With regard to

the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter*, 131 F.3d at 463.

### 2. IAC Analysis

#### a. Failure to File Motions

Movant complains that trial counsel failed to prepare and file: a motion to dismiss the indictment; motion for discovery; motion for grand jury transcripts; motion to subpoena evidence, including cell phone records, witness statements, DFPS records, bank records, hospital and other medical records for T.R. and J.R.; or "any other motions/filing to build ANY defense." D.E. 145, p. 5. According to Movant, she "had strong grounds for dismissal," as she was "exempt" from the federal kidnapping statute because she was the biological mother of T.R. and J.R. D.E. 145-1, p. 10.

As set forth in Part IV.A *supra*, the "parent" exemption was inapplicable to Movant. Because counsel has no obligation to file frivolous motions, he was not ineffective for failing to file motions attempting to dismiss the case based on the parental exception to the federal kidnapping statute. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995); *Clark v. Collins*, 19 F.3d 959, 965–66 (5th Cir. 1994). This claim is denied.

#### b. Failure to File Direct Appeal

Movant complains in part that defense counsel James Granberry ("Counsel") failed to file a notice of appeal after she asked him to do so. According to Movant, "Upon

requesting Direct Appeals be filed[,] Movants were told there were no grounds to file one and they would get more time if they did." D.E. 145-1, p. 11.

The law is clear that, if a defendant requests that counsel file a notice of appeal, counsel's failure to do so constitutes ineffective assistance, entitling the defendant to an out-of-time appeal. *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000). As the Fifth Circuit held in *Tapp*, if a defendant "is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and [he] will be entitled to an out-of-time appeal, regardless of whether he is able to identify any arguable meritorious grounds for appeal . . . ." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

In cases where the defendant fails to instruct counsel to file a notice of appeal, the court must determine "whether counsel in fact consulted with the defendant about an appeal." *Flores–Ortega*, 528 U.S. at 478. To "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* The Supreme Court has held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id.* "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability

7

that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

The Court held an evidentiary hearing on Movant's claim that Counsel failed to file a Notice of Appeal, during which Movant and Counsel testified. Minute Entry June 27, 2019, ERO at 9:29A.M.–10:33A.M. Movant testified that, right after sentencing, Counsel visited her in the holding cell. When Counsel explained that Movant had the right to appeal within 14 days, Movant told him she wanted to appeal. Counsel responded that they would talk about it later. Within a few days, Counsel visited Movant at the Aransas County Jail. Movant told Counsel she wanted to raise the following grounds on appeal: she was innocent of kidnapping because the children were given to her, the Government gave her brother immunity, the Government never investigated her calls to CPS, the Government hired Mexican bounty hunters to track her down and arrest her, she and her children were treated poorly while in custody in Mexico, and the Government did not tell the grand jury that Movant was the biological mother of T.R. and J.R. Movant stated that when she started listing her grounds for appeal, Counsel became aggravated and tried to convince her not to appeal. Counsel told her that, even if she were successful on appeal, she faced being resentenced to 20 years' imprisonment on each count of the Indictment if the Government withdrew the Plea Agreement. Counsel and Movant argued back and forth, and she eventually told him "whatever" and "left it at that." ERO at 9:58. Once Movant realized she could not appeal, she immediately began mailing Counsel letters asking for her case file in order to file a motion under § 2255.

Counsel testified that he has practiced law for 32 years and been a criminal defense attorney for 26 years. He was certain he discussed Movant's appellate rights with her, as it has always been his practice to discuss a defendant's appellate rights and answer any questions immediately after sentencing, but he could not remember every detail. In discussing an appeal, Counsel told Movant that, in his experience, when a defendant makes prosecutors work, they will not offer the same deal the next time around. He explained to Movant that the charges in the original Indictment fit her actions, and the 120-month sentence she received was a gift. Movant was nonetheless upset after sentencing because she truly believed she was innocent; however, this was a common theme throughout the case. Counsel was under the impression that Movant knew, at least on an intellectual level, that she could have received quadruple the time, and he believed she understood an appeal would be useless and did not wish to appeal. He did not remember Movant asking him to file an appeal or telling him her grounds for appeal; however, he testified, "I can tell you without question that if she had expressed that she wanted to appeal, I would have filed it, and I also would have filed a motion to withdraw." ERO at 10:12. Counsel further stated that there was no circumstance under which he would ever not file an appeal if asked to do so, even where an appeal was not in the client's best interest. "They have the right to appeal. I would try and talk them off the ledge, but I certainly would file it." ERO at 10:15.

Having considered the testimony and demeanor of both witnesses, the Court finds that Counsel was credible, while Movant was not.[1] The Court further concludes that

---

1. Several times during the § 2255 hearing, Movant changed her testimony after being confronted with contradictory evidence. For example, Movant testified at the hearing that she and Counsel did not discuss her sentencing options before she pled guilty; however, she testified at rearraignment that they had discussed what her

Movant did not instruct Counsel to appeal, Counsel adequately consulted with Movant regarding an appeal, and no rational defendant would want to appeal under the circumstances of this case. Counsel was therefore not ineffective for failing to file an appeal on Movant's behalf. This claim is denied.

### c. Failure to Communicate

Movant alleges Counsel was ineffective because he "did not disclose or share" any discovery material, defense strategies, or information regarding laws and defenses. D.E. 145, p. 5. Movant further states that Counsel "never even showed [her] her PS[R] and it wasn't until [she] was incarcerated in federal prison that she finally had the chance to read the report, which is full of errors that she never got to object to." D.E. 145-1, p. 10.

Not only has Movant failed to offer anything more than conclusory allegations, her own sworn statements in open court belie this claim. At rearraignment, Movant stated that she had discussed her case with her attorney and that she was satisfied with his services. 6/30/2016 Rearraig. Hrg. Tr., D.E. 185 at 10:12-17. Movant also stated at sentencing that she had received a copy of her PSR and had read and discussed it with her attorney. 10/27/2016 Sent. Hrg. Tr., D.E. 173 at 4:7-19. Movant's sworn statements in open court that she was satisfied with Counsel's services and had discussed her case and PSR with him are entitled to a strong presumption of truthfulness. *See United States v. Lampaziane,*

---

sentencing guidelines might be (Rearraign. Tr. at 13:15-20). She similarly testified at the hearing that she did not find out about the Plea Agreement until she was before Judge Head at sentencing; however, she testified at rearraignment that she read and discussed the Plea Agreement with Counsel and had signed it (Rearraign. Tr. at 22:7-15). Movant testified at the hearing that she only pled guilty because Counsel made her, and she was actually innocent; however, at rearraignment she testified that no one had forced or coerced her to plead guilty, and she was pleading guilty because she was guilty (Rearraign. Tr. at 21:10-22). Finally, Movant testified at the hearing that Alvarez signed and mailed his original § 2255 motion; however, she eventually admitted she forged her husband's signature, certified under penalty of perjury that he signed the motion, and mailed the motion for him.

251 F.3d 519, 524 (5th Cir. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (statements made under oath in open court "carry a strong presumption of verity" and create a "formidable barrier" in subsequent proceedings)).

Because the record directly refutes Movant's claim that Counsel performed deficiently in failing to communicate with her, this claim is denied.

### d. Failure to Investigate

Finally, Movant complains that Counsel never investigated "the history of events" surrounding the case, including witnesses, DFPS records, medical and financial records, abuse claims, or "any other defense material." D.E. 145, p. 5.

Under *Strickland*, a petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the [case]." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citing *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)); *see also United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014). Movant, however, "has failed to suggest with specificity what exculpatory evidence could have been uncovered by a more thorough investigation by [her] counsel, and has failed to show that counsel's [purported] failure to follow up on [her] leads was unreasonable." *See United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989). This claim is denied.

### C. Prosecutorial Misconduct

Movant next claims the Government engaged in prosecutorial misconduct at the grand jury and plea bargaining stages. According to Movant, "Based on the True Bill and Indictment by the grand jury – in its wording – it is clear that the jurors were not told that

11

the defendants were the biological relatives [ ] of the children, nor were told that the statute exempted their prosecution." D.E. 145-1, p. 13. Movant further alleges that the Government provided unsworn testimony, hearsay, double hearsay, personal opinions, fraudulent and irrelevant facts, and misinformation to the grand jury. Finally, Movant claims the Government coerced her into pleading guilty by threatening to ensure her father would receive the maximum sentence if she did not plead guilty; however, if she pled guilty, the Government would drop the charges against her father.

Movant did not raise her prosecutorial misconduct claim on direct appeal. Where a defendant fails to raise a claim on direct review, "the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986); *Smith v. Murray*, 477 U.S. 527, 537 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)); *see also United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994). Here, Movant has not demonstrated actual innocence, nor does she assert that her prosecutorial misconduct claim could not have been presented at an earlier time without further factual development. Instead, she states that she did not raise this issue on appeal because "Counsel stated no reason to file a direct appeal and I would get more time if I filed one." D.E. 145, p. 7.

The Court finds that Movant's explanation for her failure to raise her prosecutorial misconduct claim on appeal fails to meet the requirements set forth in *Bousley*. Accordingly, this claim is procedurally defaulted. *See United States v. Alanis*, 88 Fed. App'x 15, 22 (5th Cir. 2004) (per curiam) (§ 2255 defendant who failed to raise

prosecutorial misconduct at trial or direct appeal must show both cause and prejudice for procedural default).

### D. "Illegal" Indictment, Conviction, Sentence, and Process

Finally, Movant complains that the process by which she was arrested and charged in this case was illegal. According to Movant, U.S. Marshals paid local bounty hunters in Mexico to obtain her and her children. The bounty hunters illegally entered Movant's home at gunpoint, apprehended her and the children without allowing them time to put on shoes or proper clothing, took them to the United States Embassy, and reported them there illegally. This claim is not cognizable under § 2255. *See United States v. Addonizio*, 442 U.S. 178, 185 (1979) (§ 2255 movant must show: (1) how her sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence she received exceeded the statutory maximum sentence; or (4) her sentence is otherwise subject to collateral attack).

Movant also repeats her claim that her indictment, conviction, and sentence were "illegal" because she is exempt from prosecution under the federal kidnapping statute as the biological mother of T.R. and J.R. As set forth in Part IV.A *supra*, the "parent" exemption was inapplicable to Movant because her parental rights were previously terminated. This claim is denied.

### V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Although Movant has not yet filed a notice of appeal, this

Court nonetheless addresses whether she would be entitled to a certificate of appealability (COA). *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA—that is, reasonable jurists could not debate the Court's resolution of her claims.

## VI. CONCLUSION

For the foregoing reasons, Movant's motion under § 2255 (D.E. 145) is **DENIED**, and Movant is **DENIED** a Certificate of Appealability.

**ORDERED** July 30, 2019.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE